1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9   United States of America,              )          CR-10-0016-TUC-RCC-DTF
                                           )
10            Plaintiff,                   )
                                           )
11   vs.                                   )     **REPORT AND RECOMMENDATION**
                                           )
12                                         )
     Miguel Tzunux-Ruiz, aka              )
13   Miguel Tomas-Santos,                 )
                                           )
14            Defendant.                   )
    _____  )

15          Pending before the Court is Defendant's Motion to Suppress  Evidence. (Doc. 40.)

16   The government responded in opposition. (Doc. 45.) This matter came before the Court for

17   a hearing and a report and recommendation as a result of a referral, pursuant to LRCrim 5.1.

18   Defendant's motion was set for evidentiary hearing and evidence was heard on December

19   1, 2010. (Doc. 55.)  Defendant was present and represented by counsel.  This matter was

20   submitted following oral argument at the conclusion of the hearing and taken under

21   advisement.

22          Defendant's motion seeks to suppress two sets of incriminating statements he gave

23   to border patrol agents because they were involuntary.  Having now considered the matter,

24   the Magistrate Judge recommends that the District Court, after its independent review, deny

25   Defendant's Motion to Suppress.

26

27

28

1

## I.

2

## FACTUAL FINDINGS

3       On December 12, 2009, a Saturday, Border Patrol Agent Samuel Sarcadi responded

4   to a radio call that there were three individuals at a Chevron station that were possibly in the

5   country illegally.  (RT 11.)[1]  At approximately 3:30 a.m., he responded to the gas station,

6   which was closed and located in a commercial area on state route 92 in Sierra Vista,

7   approximately eight miles from the international border.  (RT 12.)  Agent Sarcadi indicated

8   he developed reasonable suspicion to question the individuals when he arrived at the station

9   based on the proximity to the border, the time of night and the area.  (RT 13-14.)  Agent

10  Sarcadi was driving a marked van and was wearing his border patrol uniform, however, he

11  did not have the sirens activated on his vehicle nor did he draw his weapon.  (*Id.*)  He made

12  contact with the three individuals and identified himself as a border patrol agent.  (*Id.*)  In

13  Spanish, he asked Tzunux-Ruiz his country of origin, and he responded Guatemala.  (RT 15-

14  17.)  Agent Sarcadi asked him if he had documents allowing him to be legally in the country,

15  and Tzunux-Ruiz stated no he did not have legal papers.  (*Id.*)  Agent Sarcadi informed

16  Tzunux-Ruiz that he was under arrest for being in the country illegally and he transported

17  him to the Naco border patrol station at approximately 4:10 a.m.  (RT 17, 29.)

18      Around 10:30 a.m., Border Patrol Agent Harry Martinez was instructed by a

19  supervisor to process Tzunux-Ruiz's case.  (RT 48.)  Agent Martinez testified that he is

20  fluent in the Spanish language, he grew up in Puerto Rico and Spanish is his family's first

21  language.  (RT 46, 58.)  He conducted the entire interview process in Spanish, including

22  translating any forms that were written in English.  Agent Martinez read Tzunux-Ruiz his

23  rights from the I-214 Form, which are written on the form in Spanish.  (RT 49-50, 56; Ex.

24  1.)  Tzunux-Ruiz signed the form indicating he waived his rights at 10:34 a.m.  (RT 49-50,

25

26      [1]      "RT" refers to the Reporter's Transcript of the December 1, 2010
    evidentiary hearing.  (Doc. 54.)  "Ex." refers to the government's exhibits admitted at that
27  hearing.  (Doc. 58.)

28

1   85-86; Ex. 1.)  Agent Martinez read Tzunux-Ruiz his rights again from the I-215B Form,

2   which is in written English.  (RT 62-63; Ex. 2.)  Tzunux-Ruiz indicated that he did not wish

3   to have a lawyer present and that he was willing to answer Agent Martinez's questions.  (RT

4   62; Ex. 2.)  Tzunux-Ruiz stated that he was a citizen of Guatemala, that he had previously

5   been deported, excluded or removed from the United States, and he did not have permission

6   to enter.  (RT 63; Ex. 2.)  Agent Martinez translated the statement on the I-215B from

7   English to Spanish for Tzunux-Ruiz, and Tzunux-Ruiz adopted the statement as his own by

8   signing the form.  (RT 66; Ex. 2.)

9        Border Patrol Agent Justin Youvan testified that when someone is arrested during a

10  weekend their standard practice is to call a federal magistrate judge over the weekend for a

11  probable cause finding.  (RT 137-38).[2]  There is no documentation in Tzunux-Ruiz's file of

12  such a call.  (RT 137.)  However, Agent Youvan believed there would be an archived record

13  of the call and he agreed to locate it if it does exist.  (RT 139.)  Tzunux-Ruiz appeared before

14  Magistrate Judge Glenda E. Edmonds on Monday December 14, 2009.  (Doc. 2.)

**II.**

**DISCUSSION**

17       Tzunux-Ruiz seeks to suppress his statements based on violation of *Miranda*, lack of

18  voluntariness, and unreasonable delay in presentment to a judicial officer.

19       **Initial Statements**

20       Immigration officers are granted broad powers to carry out their duties in the course

21  of enforcing United States immigration laws.  *See* 8 U.S.C. § 1357; 8 C.F.R. § 287.5.

22  Specifically, immigration officers are granted the power to interrogate any individual

23  believed to be an alien.  8 U.S.C. § 1357(a)(1); 8 C.F.R. § 287.5(a)(1).  Border Patrol agents

24  qualify as "immigration officers."  8 C.F.R. § 103.1(b).  Of course, this authority is limited

25  _____

26       [2]     The Court allowed the government to re-open the record at the end of the
    evidentiary hearing to present this evidence, in order to have a complete record prior to
27  the Report and Recommendation to the District Court.  (RT 129.)

28

1  by the Fourth Amendment's prohibition of unreasonable searches and seizures. U.S. CONST.

2  amend. IV.

3  The parties dispute whether Defendant was in custody at the time Agent Sarcadi

4  questioned him and, thus, whether he should have been advised of his rights pursuant to

5  *Miranda*. Not all encounters between individuals and law enforcement officers are seizures

6  governed by the Fourth Amendment. The Supreme Court has "held repeatedly that mere

7  police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434

8  (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, (1984). With respect to whether a

9  person's liberty has been so restrained that they are considered to be "in custody," the Ninth

10  Circuit looks at five factors:

11  (1) the number of officers; (2) whether weapons were displayed; (3) whether
the encounter occurred in a public or non-public setting; (4) whether the

12  officer's officious or authoritative manner would imply that compliance would
be compelled; and (5) whether the officers advised the detainee of his right to

13  terminate the encounter.

14  *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).

15  In this case, Agent Sarcadi testified that he received a radio broadcast that three

16  suspected illegal aliens were outside a closed Chevron gas station. (RT 11.) It took the agent

17  about 10 minutes to drive to that location and the people were still there. (RT 12.)

18  Defendant did not try to leave and was apparently waiting at that location for something or

19  someone. This was not a coercive environment. The agent had not activated his lights or

20  siren and parked about 20 feet from Defendant and approached him on foot. Although

21  armed, the agent had his weapon holstered. This was not a police dominated encounter.

22  Agent Sarcadi was alone and Defendant was accompanied by two other individuals.

23  Defendant was not handcuffed and Agent Sarcadi did not shout at him. After identifying

24  himself, Agent Sarcadi only asked Defendant two questions; from what country he was a

25  citizen and whether he had documents permitting him to be in the United States. After

26  responding to these questions, Defendant was taken into custody. (RT 13-14, 17.)

27

28
- 4 -

1    Defendant argues he was in fact in custody at the time Agent Sarcadi questioned him

2  because the agent testified that Tzunux-Ruiz was not free to leave prior to him completing

3  his questioning.  First, the Court notes Defendant never attempted to leave.  Second, a "brief

4  but complete restriction of liberty, if not excessive under the circumstances, is permissible

5  during a *Terry* stop and does not necessarily convert the stop into an arrest." *United States*

6  *v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

7    The circumstances of this case are analogous to those set forth in *United States v.*

8  *Galindo-Gallegos*, 244 F.3d 728 (9th Cir. 2001), cited by the government, where the Court

9  found Defendant was not in custody.  Here, as in *Galindo-Gallegos*, border patrol agents

10  questioned Defendant after he was stopped near the border; the questioning took place out

11  of doors; the location was isolated, away from view by the general public, but there were

12  three aliens and only one law enforcement official; no one was handcuffed; the questions

13  were a necessary predicate to letting anyone go free, but were also reasonably likely to elicit

14  incriminating admissions by those for whom the facts were incriminating.  *Id*. at 730; *see*

15  *United States v. Drayton*, 536 U.S. 194, 200 (2002) (no seizure when officers question

16  willing individuals in street or other public places).  Accordingly, the Court finds that

17  Defendant was not in custody during Agent Sarcadi's brief encounter and *Miranda* was not

18  implicated.

19    **Second Statements**

20    Waiver of Rights

21    There is no dispute Defendant was in custody at the time he was interviewed by Agent

22  Martinez.  For incriminating statements obtained during a custodial interrogation to be

23  admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *See*

24  *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).    A waiver of *Miranda* rights "is knowing and

25  intelligent if, under the totality of the circumstances, it is made with a full awareness of both

26  the nature of the right being abandoned and the consequences of the decision to abandon it."

27  *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and

28

1   quotations omitted).  There is a presumption against waiver, and the Government bears the

2   burden of proving a valid waiver by a preponderance of the evidence.  *See Colorado v.*

3   *Connelly*, 479 U.S. 157, 168 (1986); *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.

4   1986).

5         The government offered evidence that Defendant signed a rights waiver form.

6   Defendant contends that his waiver was not valid because the form was written in English

7   and he only speaks Spanish.  Initially, there were two forms presented to Defendant, which

8   set forth Defendant's *Miranda* rights.  The first form was an I-214, Immigration and

9   Naturalization Service Aviso De Derechos.  (Ex. 1.)  This form included a Spanish language

10  version of Defendant's *Miranda* rights.  (*Id.*)  According to Agent Martinez, he read these

11  rights to Defendant in Spanish and Defendant signed the I-214 Form acknowledging that he

12  understood his rights and again indicating that he waived these rights.  (RT 49, 54, 56.)  The

13  second form was an I-215, Department of Homeland Security Record of Sworn Statement

14  in Affidavit Form, which was written only in the English language.  (Ex. 2.)  This form

15  included an English language version of a defendant's *Miranda* rights.  (*Id.*)  According to

16  Agent Martinez, he translated this form from English into Spanish and visa versa for

17  Defendant.  (RT 57, 60, 63, 64-66.)  The I-215 Form also advised Defendant of the subject

18  nature of the interview.  (Ex. 2.)  Hence, the evidence before the Court demonstrates that

19  Defendant was advised of his *Miranda* rights in Spanish and signed both the

20  acknowledgment and a waiver of these rights.  Accordingly, the Court finds Defendant was

21  advised of his *Miranda* rights and voluntarily waived them.

22        At the evidentiary hearing, Defendant raised a related matter – that the statement on

23  the I-215 Form is not admissible because it is in English and, therefore, is not his statement.

24  The Court finds this argument wholly unpersuasive.  As stated above, Agent Martinez

25  translated the entirety of the form and the statement into Spanish and Defendant

26  acknowledged his adoption of the statement by signing the form.  (RT 66.)  There is no

27  evidence before the Court that the I-215 Form does not accurately represent the substance

28

1  of Defendant's statement to Agent Martinez.

2          Delay in Presentment and Voluntariness of Confession

3          Defendant Tzunux-Ruiz was taken into custody at about 4:10 a.m. on a Saturday and

4  was advised of his *Miranda* rights at about 10:30 a.m.  (RT 54, 73.)  Defendant argues that

5  the delay exceeding six hours from arrest to interview renders his confession inadmissible.

6  When a person is arrested, the arresting officer "must take the defendant without unnecessary

7  delay before a magistrate judge, or before a state or local judicial officer."  Fed. R. Crim. P.

8  5(a)(1)(A).  A confession made by a person under arrest is not inadmissable based on delay

9  in presenting the defendant to a magistrate:

10          if such confession is found by the trial judge to have been made voluntarily
           and if the weight to be given the confession is left to the jury and if such

11          confession was made or given by such person within six hours immediately
           following his arrest or other detention: Provided, That the time limitation

12          contained in this subsection shall not apply in any case in which the delay in
           bringing such person before such magistrate judge . . . beyond such six-hour

13          period is found by the trial judge to be reasonable considering the means of
           transportation and the distance to be traveled to the nearest available such

14          magistrate judge.

15  18 U.S.C. § 3501(c).  The statute creates a six-hour "safe harbor" period during which a

16  confession is not excludable based only on delay.  *United States v. Van Poyck*, 77 F.3d 285,

17  288 (9th Cir. 1996).

18          There is no dispute that Tzunux-Ruiz's second statements occurred more than six

19  hours after he was detained and prior to his being presented to a magistrate judge.[3]

20  Defendant argues that the only exception allowed for violation of the six-hour period is if the

21  delay is reasonable in light of transportation and the distance to an available magistrate,

22  which he contends was not met in this case because of the availability of state court judges.[4]

23

24          [3]     The government argues that the six-hour period should be extended because
25  no magistrate was available within six hours.  The Court does not rely on this argument
    because it finds the delay reasonable under *McNabb-Mallory*.

26
           [4]     According to Agent Martinez, in his experience, neither federal nor state
27  courts are open on the weekends.  (RT 98.)

28

1   The statute addresses only the admissibility of confessions made during the six-hour "safe

2   harbor" period or an extension of that period for reasonable delay based on transportation and

3   distance.   However, if the statement was made outside the safe harbor period, it is not

4   automatically rendered inadmissible.   Rather, "the court must decide whether delaying that

5   long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the

6   confession is to be suppressed." *Corley v. United States*, 129 S. Ct. 1558, 1563, 1571 (2009)

7   (the *McNabb-Mallory* rule excludes confessions obtained during detention that violates Rule

8   5(a)'s prompt presentment requirement).

9          A "weekend delay in arraignment due to the unavailability of a magistrate does not

10   by itself render the delay unreasonable under § 3501(c)." *United States v. Van Poyck*, 77

11   F.3d 285, 289 (9th Cir. 1996).   Public policy does not favor preclusion of Defendant's

12   statements because the delay was not incurred in order to interrogate him.   Rather, the delay

13   was occasioned by the volume of defendants processed at the Naco border patrol station in

14   a given weekend and the standard practice in this district to present defendants arrested on

15   the weekend for an initial appearance on Monday afternoon.[5]  *See id.* at 290.

16          In this case, Agent Martinez initiated his interviewed with Defendant six hours and

17   20 minutes after Agent Sarcadi took him into custody. As discussed above, Defendant was

18   advised of his *Miranda* rights, including his right to counsel and to stop answering questions

19   at any time.   Defendant waived these rights.   (RT 76.)   Except for Defendant's mere

20   assertion, the Court has not found any facts that suggest the confession was involuntary,

21   except for the delay.

23          [5]     At the evidentiary hearing, the government presented evidence regarding
whether there was a timely probable cause determination made regarding Defendant's
24   arrest.  A probable cause finding is distinct from the prompt presentment requirements for
a defendant's initial appearance before a judicial officer. *See Van Poyck*, 77 F.3d at 289
25   n.6 (noting the 48-hour window for probable cause) (citing *County of Riverside v.*
*McLaughlin*, 500 U.S. 44, 56 (1991)).  Because Defendant did not make any arguments
26   regarding the timeliness of the judicial probable cause finding in this case, the Court does
27   not address it.

28

1    To ensure due process, the test for determining the voluntariness of a suspect's
2  confession is whether, considering all the circumstances, the government obtained the
3  statement by physical or psychological coercion or by inducement so that the suspect's will
4  was overcome. *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (citing
5  *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).  The circumstances to be considered
6  include: (1) whether there was police coercion; (2) the length of the interrogation, its location
7  and its continuity; (3) whether police advised the suspect of her rights; and (4) whether there
8  were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th
9  Cir. 2003).  Courts may also consider the defendant's age, education, the nature of any
10  questioning, and the use of any physical punishment such as the deprivation of food or sleep
11  to determine voluntariness. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir.
12  2003) (citing *Schenckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

13    Agent Martinez did not think Defendant was sleepy at the time of the interview and
14  he could have slept in the cell prior to the interview if he were tired.  (RT 93, 95.)  The
15  interview was conducted by only two border patrol agents, while Defendant was sitting
16  unshackled in front of a desk.  (RT 49.)  Excluding questions concerning his rights,
17  Defendant was asked only 11 short declarative questions, including his name, date and place
18  of birth, time and place of last entry, method of entry, whether he had been previously
19  deported, whether he applied for reentry or whether he had any fear of persecution and
20  torture if he were removed from the United States.  This brief interview was not a police
21  dominated or coercive interrogation.  Rather, the interview appears to the Court to be a
22  routine immigration examination seen commonly in this Court.  Accordingly, the Court finds
23  that the delay was reasonable and did not render the confession inadmissable.  Further, the
24  confession was voluntary, despite the delay.

25    Therefore, based on the totality of the circumstances presented to the Court, the
26  government has established by a preponderance of the evidence, that Defendant knowingly
27  waived his *Miranda* rights and made a voluntary statement.

28

# III.

# **RECOMMENDATION**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Suppress. (Doc. 40.) Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR-10-0016-TUC-RCC**.

DATED this 10th day of December, 2010.

D. Thomas Ferraro
United States Magistrate Judge